In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-00752-CV

____________


MUNTERS CORPORATION, Appellant


V.


SWISSCO-YOUNG INDUSTRIES, INC., Appellee






On Appeal from the 157th District Court

Harris County, Texas

Trial Court Cause No. 92-15607






DISSENTING OPINION

 I am persuaded by appellant's motion for rehearing that, in our original
opinion, we overlooked a material, uncontroverted, and determinative fact:
appellant's specific representations about the de-misters were in response to
inaccurate specifications provided by appellee.

 The majority opinion on rehearing continues to hold that, by the representations
in its March 12, 1991 fax, appellant made specific material misrepresentations that
were actionable under the DTPA. I disagree.

 Appellee was in the business of designing and installing custom cooling
systems. Appellee purchased from appellant a $50,000 component part to be installed
in the $300,000 custom cooling system appellee was assembling for its customer in
California. It is uncontroverted that appellee decided to purchase the T-130
component part from appellant based on appellant's response to appellee's March 11,
1991 faxed inquiry, which reads:

Attached is a new arrangement for the placement of the de-misters. Since the former arrangement is so limited we have
chosen to move the system into the duct work. Please review
and respond as to the pressure drop and if we will have a
problem with turbulance.


The attachment is a diagram showing the placement of the de-misters in the duct
work, and specifying that air velocity through the de-misters would be 1,082 feet per
minute (about 12 miles per hour).

 In response, by a March 12, 1991 fax message, appellant replied:

Subject: Revised mist elimination proposal


Message:

 Engineering has given their approval of the idea of using
the bottom portion of the module as a drain box for the
application. We now offer the modules with a closed
bottom, fitted with drain couplings - suitable for stacking
one on another. I have re - sized the modules to put the
9" previously elevated to the drain box into module face
area to reduce DP. . . . . 


 We confirm that carry over from Plasdek will be
significant at 870 - 900 feet per minute but droplets will
be coarse. A T-130 is an appropriate collector.

 

 I want to be sure that you have considered any possible
reduction in performance due to the high velocity through
the Plasdek and strategies for keeping the water in the
media. If I can help please let me know.

 

 I hope that this helps. I feel a lot better about the velocity
and the [mist eliminator pressure drop] is more in line
with what you wanted. Let me know how I can help.


 When appellee installed the de-mister provided by appellant into the custom
cooling system and then tested the system, it was discovered that air velocities around
the de-misters were as high as 6000 feet per minute (about 68 miles per hour) rather
than the 1082 feet per minute (about 12 miles per hour) that had been specified by
appellee. Because de-misters do not operate at such high air velocities, they were
ineffective and the custom cooling system built by appellee therefore did not meet the
performance requirements of its customer.

 The majority opinion holds that appellant's March 12 "revised mist elimination
proposal" constituted a misrepresentation of a material fact, even though there was
no evidence of how the custom cooling system would have performed if appellee's
March 11 specifications had been correct. If the air velocity around the de-misters
would have been about 12 m.p.h. rather than 68 m.p.h., the de-misters may well have
operated as appellant represented they would.

 The March 12 proposal from appellant, responding to misinformation from
appellee, was not shown to be a "false, misleading, or deceptive act" by appellant. 
Accordingly, I would sustain appellant's first issue. (1) 

 We should reverse and render judgment for appellant.



 Margaret Garner Mirabal

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings.


Do not publish. Tex. R. App. P. 47.



 
1. I agree with the majority opinion that the general statements in appellant's
sales literature did not constitute actionable misrepresentations under the
DTPA. In its brief appellee acknowledges: "The sales literature itself is not the
core of the DTPA violation . . . . The statements in the sales literature simply
provide the context and background circumstances that must be taken into
account when one reads the misrepresentations in the March 12 fax."